CHARLES KOMAR & SONS, and the Hartford Insurance Group, Petitioners,

v.

Sarah HICKS and the Workers' Compensation Court, Respondents.

No. 80452.

Court of Appeals of Oklahoma, Division No. 1.

March 23, 1993.

to include Tom's hand notes executed after that date?

Catherine A. Gatchell, Tulsa, for petitioners.

Wilson Jones, Tulsa, for respondents.

### MEMORANDUM OPINION

GARRETT, Judge:

Respondent Sarah E. Hicks (Claimant) filed her Form 3 in the Workers' Compensation Court initially on September 18, 1986, alleging she sustained an accidental injury arising out of and in the course of her employment with Petitioner Komar & Sons (Employer) on November 12, 1985. She alleged she suffered a strain and sprain to her back, left leg and tailbone when she slipped on a snap and fell on the floor.

On December 29, 1988, the trial court entered an order finding she sustained an accidental personal injury to her back arising out of and in the course of her employment. The court found that as a result of the injury, Claimant was paid temporary total disability (TTD) benefits from November 12, 1985 to December 19, 1988, and sustained Employer's motion to terminate TTD and ordered Employer was to have credit for overpaid TTD from April 13, 1988 to December 19, 1988, from any permanent partial disability (PPD) in this case. Claimant filed an appeal with the Court *En Banc* which affirmed the trial court in an order filed March 29, 1989.

On January 25, 1990, Claimant filed a Form 9, requesting temporary disability from December 20, 1988, and continuing, and medical treatment from November 12, 1985 and continuing. On January 25, 1991, the trial court entered an order awarding Claimant TTD from September 11, 1990 to the date of the order and continuing, not to exceed 150 weeks. The issue of TTD from December 20, 1988 to September 11, 1990 was reserved for future hearing. The court also ordered Employer to furnish Claimant with necessary medical treatment, including all diagnostic testing, with said treatment to be rendered by Dr. Mark Hayes. On March 1, 1991, Employer filed a Form 11, Motion to Terminate Temporary Compensation. Claimant filed a Form 9 on November 27, 1991, requesting a trial on the issues of: temporary disability from November 12, 1985 to November 8, 1991; medical treatment from November 12, 1985 and continuing; PPD; and permanent total disability (PTD). Employer filed a Form 11 on February 12, 1992, listing as affirmative defenses, that Claimant is not TTD or PTD. It listed as exhibits to be introduced at trial: "Medical and vocational rehabilitation reports (on receipt)". Employer filed a Form 9 on May 7, 1992, requesting a motion for pre-hearing conference on the issue "Refused to attend vocational rehabilitation evaluation". On May 26, 1992, Employer filed another Form 9 seeking a motion for pre-hearing conference to be held before June 17, 1992 on the following issue: "Request for Transferable Skills Evaluation".

On July 8, 1992, the trial court entered an order, the court found employer was entitled to a credit for overpayment of TTD compensation from April 13, 1988 to December 19, 1988; and from February 18, 1991 to March 25, 1991. The court also found, *inter alia*, Claimant was totally and permanently disabled from February 18, 1991 and continuing. Employer appealed to the Court *En Banc*. On September 28, 1992, a three judge panel entered its order, affirming the trial court. This review proceeding followed.

Employer raises the following two propositions of error:

1. The court committed reversible error in denying the request of Employer and Insurance Carrier for a transferrable skills evaluation, for purposes of evidence only, to determine whether Claimant met the economic requirements for permanent total disability under 85 O.S. § 3(12);[1] and

---

1. 85 O.S.1991 § 3(12) provides:

    (12) "Permanent total disability" means inca-

    pacity because of accidental injury or occupa-

2. The court erred in applying the time limitations of Workers' Compensation Court Rule 41 to Employer's request for a vocational rehabilitation/transferrable skills evaluation, using it to find the request untimely.

■ The trial court's order did not address the issue of Employer's request for the transferrable skills evaluation (the evaluation), but the transcript clearly indicates the court denied the request:

It's the Court's opinion that there is a definite distinction between issues of a vocational rehabilitation evaluation and a transferable skills evaluation. And, in fact, there is case law stating that in a case requesting permanent total disability benefits that evidence regarding whether or not a claimant can be vocationally rehabilitated is not admissible.

As far as the Court is aware, there is no specific section in the court rules or the statutes that addresses a transferable skills evaluation per se. In light of that information, the Court is taking the position that rules with regard to transferable skills evaluation should be the same as for requesting independent medical examinations, which requires that the moving party request an independent medical examination within 60 days of a motion to set for trial being filed.

The Court is also well aware of the time frame involved and the time it's taken for injured employees to get their cases heard before the Court and, based upon all those matters, the Court is not inclined to continue this case since the parties are here and prepared to try this case on the applicable issues today.

Therefore, the Court is going to deny respondent's request for a transferable skills evaluation at this time and proceed with testimony.

Claimant contends that a transferable skills evaluation and a vocational rehabilitation evaluation measure different abilities. The former measures the claimant's present capabilities to perform another job based upon a counselor's assessment of current educational level, job skills, physical abilities and past experience. The latter, however, measures the education and training necessary, i.e., the rehabilitation potential, to learn a new job which the claimant is presently unable to perform. The Supreme Court has held that evidence of the latter is inadmissible if used for the purpose of determining eligibility for permanent total disability. See *TWA v. McKinley*, 749 P.2d 108 (Okl.1988). Employer cites *McKinley*, stating that the employer therein introduced a rehabilitation counselor's opinion as to what his current condition was and whether he had transferable skills. However, our reading of *McKinley* indicates that, although such skills were mentioned, the issue in the case was whether evidence of vocational rehabilitation *potential* was admissible.

Employer contends it was prevented from defending against Claimant's request for PTD benefits by presenting evidence, as to the economic portion of the PTD determination, that she is presently capable of performing another job. It contends there was only Claimant's self-serving statement that she was unable to work. Claimant testified that her education was only through the eighth grade and that her only job experience was that of seamstress (for Employer) and as a nurse's aide. Although Claimant's physician gave the opinion there was no other job for which she was suited, Employer contends this opinion was made without any basis upon which to address the economic aspects of her disability.

There is no statutory requirement for a workers' compensation claimant to submit to a transferable skills evaluation. In the instant case, there was evidence that Claimant could not sit for long periods of time, that she was uneducated, and that her job training was limited. It is clear that her physician based his opinion that she was unable to perform other jobs on

tional disease to earn any wages in any employment for which the employee is or becomes physically suited and reasonably fitted by education, training or experience; loss of

both hands, or both feet, or both legs, or both eyes, or any two thereof, shall constitute permanent total disability.

these facts. Employer's medical expert gave the opinion that Claimant was able to perform her job with Employer. Thus, there was competent evidence, although disputed, before the trial court as to whether Claimant was permanently and totally disabled. Because we hold the transferable skills evaluation was not mandated under the Workers' Compensation statutes, the trial court did not commit error in refusing to require it. It becomes unnecessary to address whether the trial court committed error in holding the request was untimely by treating the request as a request for an independent medical examination.

This case is distinguishable from our unpublished decision dated February 4, 1992, in Case Number 77,430, *Quality Truss Company and Tri–State Insurance Company v. Chupp.* The issue was the effect of evidence relating to transferable skills, if such an evaluation had been accomplished. We held that evidence of transferable skills was admissible *only* to show present, not future, ability to earn any wages in employment for which Claimant is presently physically suited and reasonably fitted by education, training or experience. There was no issue in that case as to whether an examination of a claimant as to a "transferable skills evaluation", is required or not required, or permitted or not permitted.

Findings of fact made by the trial court are binding and conclusive in review proceedings before this Court, unless they lack support in competent evidence. *Parks v. Norman Municipal Hospital*, 684 P.2d 548 (Okl.1984). It is only when competent evidence is lacking that the trial court's decision may be determined to be erroneous as a matter of law. *Parks*, supra. The order on appeal is supported by competent evidence.

ORDER SUSTAINED.

ADAMS, P.J., and JONES, J., concur.